UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| WILLIAM CHARLES WIDMANN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 2:24-CV-25-TAV-CRW |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendant's motion to dismiss [Doc. 7]. Defendant seeks dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff has responded [Doc. 12], defendant has replied [Doc. 13], and therefore, the motion is ripe for review. For the reasons set forth below, defendant's motion to dismiss [Doc. 7] is **GRANTED in part** and **DENIED in part**.

**I. BACKGROUND**

In his complaint, plaintiff states that he brings this action pursuant to 28 U.S.C. § 2671, the Federal Tort Claims Act ("FTCA"), after the United States Department of Veterans Affairs ("VA") denied his claim, thereby exhausting his administrative remedy [Doc. 1 ¶¶ 3–4]. Plaintiff states that he is an 83-year-old man, and that his prostate specific antigens ("PSAs") have rapidly escalated significantly since 2007 [*Id.* ¶ 5; Doc. 1-2]. Specifically, plaintiff's PSA level on February 6, 2007, was 7.70, and over 15 years later, on November 29, 2022, plaintiff's PSA level was 259.67 [Doc. 1 ¶ 5; Doc. 1-2]. Plaintiff alleges that Mountain Home/James H. Quillen V.A. Medical Center ("VAMC") failed to check plaintiff's PSA levels each year, specifically from 2015 to 2022, and this caused plaintiff to have metastatic prostate

cancer [Doc. 1 ¶ 10].  Parsed further, plaintiff makes two specific claims: (1) the VAMC failed to check his PSA levels annually or biannually, and (2) VAMC failed to timely diagnose and treat him [*Id.* ¶¶ 7–8].  Plaintiff contends that if his PSA levels were timely checked and treated, he would have been able to make a decision to have a biopsy or get further testing done [*Id.* ¶¶ 9–10; Doc. 1-2].

In total, plaintiff claims that as a direct and proximate result of the actions of the defendant, he has incurred his metastatic prostate cancer diagnosis, physical and mental pain and suffering, and loss of enjoyment of life [Doc. 1 ¶ 11].  Plaintiff demands judgment against defendant in the amount of $10,000,000.

Defendant filed a motion to dismiss in this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing respectively that plaintiff's claims are barred under Tennessee's three-year statute of repose, codified as Tennessee Code Annotated § 29-26-116(a)(3), and time barred under the FTCA.

## II.     STANDARD OF REVIEW

### A.     Rule 12(b)(1)

Rule 12(b)(1) permits a party to seek dismissal based on a lack of subject matter jurisdiction.  Rule 12(b)(1) motions fall into two categories: "facial attacks and factual attacks."  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  "A facial attack is a challenge to the sufficiency of the pleading itself."  *Id.*  In considering whether jurisdiction has been established on the face of the pleading, "the court must take the material allegations of the [pleading] as true and construed in the light most favorable to the nonmoving party."  *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)).  "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual

existence of subject matter jurisdiction." *Id.* In that instance, no presumptive truthfulness applies to the complaint's factual allegations and the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (internal quotation marks omitted).

Here, defendant states that they launch "both a facial and factual attack in this case" [Doc. 8, p. 5]. Notably, unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), "where subject matter jurisdiction is challenged under Rule 12(b)(1)[,] . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium*, 78 F.3d at 1134 (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986)).

### B. Rule 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

A court may consider exhibits attached to the complaint when ruling on a motion to dismiss. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). However, if an exhibit contradicts the complaint, courts should disregard the allegations in the complaint in favor of the information in the exhibit. *Williams*, 498 F. App'x at 536.

### III. ANALYSIS

"In general, the United States is protected by sovereign immunity and on this basis cannot be sued without its consent." *S. Rehab. Grp., P.L.L.C. v. Sec'y Health & Human Servs.*, 732 F.3d 670, 676 (6th Cir. 2013) (citing *United States v. Sherwood*, 312 U.S. 574, 586 (1941)). Only Congress can waive this immunity, but such waiver "must be unequivocally expressed in the statute statutory text[,]" "strictly construed in favor of the United States[,]" and "not enlarged beyond what the language of the statute requires." *Id.* (citations omitted).

Courts are cautioned to not "assume the authority to narrow the waiver that Congress intended." *United States v. Kubrick*, 444 U.S. 111, 118 (1979) (citation omitted).

As mentioned previously, plaintiff's claims were brought pursuant to the FTCA, "which provides for a waiver of the federal government's sovereign immunity in limited contexts and 'is the exclusive remedy for suits against the United States or its agencies sounding in tort.'" *A.J.J.T. v. United States*, No. 3:15-CV-1073, 2016 WL 3406138, at *2 (M.D. Tenn. June 21, 2016) (quoting *Himes v. United States*, 645 F.3d 771, 776 (6th Cir. 2011)). For a plaintiff to avail himself of this waiver and file suit in federal court, a plaintiff must comply with the procedural requirements of 28 U.S.C. § 2401, which provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). "A plaintiff's satisfaction of these procedural requirements does not, however, necessarily entitled the plaintiff to recover under the FTCA" because the FTCA "does not create a cause of action against the United States." *A.J.J.T.*, 2016 WL 3406138, at *3 (citation omitted). Rather, the FTCA merely "waives sovereign immunity to the extent that state-law would impose liability on 'a private individual in similar circumstances.'" *Myers v. United States*, 17 F.3d 890, 894 (6th Cir. 1994) (quoting 28 U.S.C. § 2674). Thus, courts applying the FTCA must "look to the substantive tort law of the state in which the cause of action arose to determine liability and damages." *Huddleston v. United States*, 485 F. App'x 744, 745 (6th Cir. 2012).

It is undisputed in this case that plaintiff's claims arise out of the alleged malpractice of medical staff at VAMC located in Tennessee, and therefore, the Court must look to

Tennessee law to determine the liability of defendant for plaintiff's injuries. Under Tennessee law, a plaintiff must meet the requirements of a statute of repose in order to have a cause of action for medical malpractice. The Court turns first to these requirements as the parties dispute whether they were met in this case.

A.      12(b)(1) Claim — Tennessee's Statute of Repose

As stated previously, defendant moves to dismiss pursuant to Rule 12(b)(1), arguing that this Court lacks subject matter jurisdiction because plaintiff failed to file his complaint within Tennessee's three-year statute of repose for health care liability actions:

> In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.

Tenn. Code Ann. § 29-26-116(a)(3).

Here, the parties disagree as to what triggered the three-year repose period. Relying on plaintiff's statement that the VAMC "fail[ed] to check [his] PSA levels annually or biannually," defendant claims that "plaintiff knew or should have known no later than January 14, 2016—two years after his last PSA check at VAMC—that no PSA check had been performed" [Doc. 8, p. 8 (citing Doc. 1 ¶ 5)]. Further, defendant states that based on plaintiff's medical records, "his cause of action—if any—accrued more than three years prior to August 23, 2023, when he first filed his SF-95 with the VA" [*Id.* at 9; *see* Doc. 8-1]. Plaintiff does not assert an exact date from which the three-year repose period would have begun, but he does assert that "the triggering act or omission in this case is the failure to detect cancer, not simply

the failure to provide a yearly or bi-annual [PSA] test" [Doc. 12, p. 2].[1] It is unclear from plaintiff's complaint and response to defendant's motion to dismiss when this "failure to detect cancer" occurred, but presumably, it would be within the three-year statute of repose time period as plaintiff has not plead fraudulent concealment. *See* Tenn. Code Ann. § 29-26-116(a)(3).

The statute of repose "is a substantive requirement, not just a procedural hurdle." *Huddleston*, 485 F. App'x at 745–46 (citing *Cronin v. Howe*, 906 S.W.2d 910, 913 (Tenn. 1995)). "Unlike a statute of limitations, which eliminates the remedy available to plaintiffs, Tennessee's statute of repose extinguishes the cause of action itself." *Eiswert v. United States*, 322 F. Supp. 3d 864, 871 (E.D. Tenn. 2018). Both Tennessee courts and the Sixth Circuit have acknowledged that "the statute of repose can have harsh results for a plaintiff injured by medical malpractice, because the plaintiff's claim could be extinguished by operation of law before the plaintiff even discovers the injury." *Stinnett v. United States*, 891 F. Supp. 2d 858, 867 (M.D. Tenn. 2012) (citations omitted); *accord Givens v. Josovitz*, 343 S.W.3d 76, 81 (Tenn. Ct. App. 2010). Specifically, Tennessee's "three-year statute of repose begins to run on the date of the allegedly negligent act [or omission], rather than upon discovery of the injury." *Givens*, 343 S.W.3d at 81 (citing *Benton v. Snyder*, 825 S.W.2d 409, 413 (Tenn. 1992)); *accord Shadrick v. Coker*, 963 S.W.2d 726, 735 (Tenn. 1998).

The Court begins with two observations. First, defendant appears to mistake the trigger of the statute of repose for plaintiff's discovery of his injury rather than the date of the alleged

---

[1] Plaintiff repeatedly asserts that he was never discharged as a patient from VAMC and that he never refused repeat PSA checks, arguing "therefore the duty to continue to check and educate continues" [*Id.* at 2–3].

negligent act or omission [Doc. 8, p. 8].  Specifically, defendant relies on what plaintiff "knew or should have known" in its argument that the statute of repose period had expired long before plaintiff filed this action [*Id.*].  As discussed above, the statute of repose can extinguish a claim before a plaintiff even discovers their injury and thus, what plaintiff "knew or should have known" is irrelevant in determining whether the statute of repose has run.  *See Stinnett*, 891 F. Supp. 2d at 867.  Second, instead of relying on the date plaintiff filed his complaint to define the end date of the statute of repose period, defendant relies on the date on which plaintiff filed his administrative claim—August 23, 2023 [Doc. 8, p. 9].  While the term "action" is not defined in Tennessee Code Annotated § 29-26-116(a)(3), a "'health care liability action' means any civil action . . . ." Tenn. Code Ann. § 29-26-101(a)(1).  "All civil actions are commenced by filing a complaint with the clerk of the court."  Tenn. R. Civ. P. 3; *accord* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). Therefore, according to Tennessee law, it appears an administrative claim is not an "action" under § 29-26-116(a)(3).  *See Eiswert*, 322 F. Supp. 3d at 872.  Ordinarily then, the end date of the statute of repose period would be the filing of the complaint rather than the filing of an administrative claim.  It appears then that the government may be attempting to reconcile court's disagreement as to when, if at all, a state's statute of repose may be preempted by the filing requirements of the FTCA, a dispute prompted by the Sixth Circuit's opinions in *Huddleston* and *Kennedy v. United States Veterans Administration*, 526 F. App'x 450 (6th Cir. 2013).  *See Hyder v. United States*, No. 3:17-CV-285, 2020 WL 127661, at *7–8 (M.D. Tenn. Jan. 10, 2020).

In *Huddleston*, the Sixth Circuit held that Tennessee's statute of repose applied to bar the plaintiff's medical malpractice action under the FTCA where the plaintiff filed his

administrative claim over three years after the alleged negligence and filed his lawsuit over four years after the alleged negligence. 485 F. App'x 745–46. In reaching this holding, the court concluded that "[p]laintiffs must satisfy § 2401(b) in addition to—rather than in place of—meeting substantive state tort-law requirements." *Id.* at 745. And such result, the court explained, does not violate the Supremacy Clause. *Id.* at 745–46. The *Huddleston* court expressly left open the question of "whether [the defendant] could bring suit if he had filed his administrative claim with the VA within three years because [the defendant] did not, in fact, file his claim with the VA until December 2009, two months after the statute of repose extinguished his claim." *Id.* at 746.

In *Kennedy*, issued a year after *Huddleston*, the court held that the Ohio statute of repose did not bar the plaintiff's FTCA claim based on certain state law decisions construing the statute. 526 F. App'x at 454–56. "Because the state statute did not apply to bar the plaintiff's claim, the court reasoned[] there was no conflict between the state statute and the FTCA, and it was not necessary to consider the preemption issue left open in *Huddleston*." *Hyder*, 2020 WL 127661, at *7 (citing *Kennedy*, 526 F. App'x at 454–56). In her concurring opinion, however, Judge White explained that she would resolve the appeal by holding that the state statute was preempted by the FTCA under the circumstances presented because she disagreed with the majority's interpretation of the state statute. *Kennedy*, 526 F. App'x at 455. Judge White explained:

> Kennedy was injured in November 2006 and filed his administrative claim in November 2008, within the boundaries of both the Ohio repose period and the FTCA limitations period. Kennedy did not receive the agency's notice of denial until August 2010, which began the six-month federal limitations period to bring his claim in federal court, but left only three months remaining on the state repose period. Defendant accurately observes that it was not impossible for Kennedy to comply with both the Ohio statute of repose and FTCA statute of

> limitations since he could have filed his claim in federal court within three months after receiving the administrative denial or earlier. However, it is clear that Congress intended the administrative process to be the preferred method for resolving tort claims against the federal government and that a plaintiff engaging in that process have six months after the agency denial to evaluate his or her position. Because the Ohio medical-malpractice statute of repose operates in this case to undercut the federal procedure, it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' and thus does not apply under conflict preemption principles. *Arizona v. United States*, 567 U.S. ——, 132 S.Ct. 2492, 2501, 183 L.Ed.2d 351 (2012) (internal quotation marks omitted).
>
> Section 2401(b) was enacted to provide a more efficient and effective process for resolving tort actions against the federal government. That process imposed no time limits on the federal agency considering the claim and provides the claimant six months after the agency denial to file suit in federal court. The process is mandatory, and all its components and time limits are part of the whole of the FTCA scheme. Congress clearly intended that a claimant who files a timely claim with the agency will have properly invoked the administrative process and is entitled to file suit within six months of the agency decision, which Kennedy did. To conclude otherwise would allow agencies to delay notices of denial in order to allow the statute of repose to extinguish a plaintiff's claim. This outcome is not what Congress intended when it enacted § 2401(b).

*Id.* at 458–59 (footnote omitted).

In Judge Hood's concurring opinion, he expressed his agreement with the court's interpretation of the Ohio Statute, but he noted that "the majority opinion in this matter should not be read to foreclose the application of preemption doctrine in other instances where an actual conflict between state and federal law concerning the time to commence a suit under the Federal Tort Claims Act arises on the facts." *Id.* at 459.

In *Hyder*, a similar case in which the plaintiff claimed that medical providers were negligent in failing to diagnose her breast cancer for several years, the court applied the above Sixth Circuit authority on the preemption issue. 2020 WL 127661, at *8. In doing so, the court divided the plaintiff's claims into two time periods. *Id.* First, following *Huddleston*, the court found that any negligence claims based on events occurring three years or more before

the date the plaintiff filed her administrative claim, *i.e.*, earlier than April 18, 2013, were barred. *Id.* "For any claim arising during that period, there is no conflict between the state statute and the FTCA because [the plaintiff] did not file an administrative claim within three years after the alleged negligence." *Id.* Next, for the plaintiff's negligence claims arising on or after April 18, 2013, until her last visit at the hospital on October 8, 2014, the plaintiff filed her administrative claim before the three-year repose period on April 18, 2016, "and therefore, a conflict exists, as in *Kennedy*, between compliance with the FTCA and Tennessee's statute of repose." *Id.* For the claims arising during this time period, the *Hyder* court was persuaded by Judge White's concurrence in *Kennedy* such that the preemption doctrine applied to bar the application of the statute of repose. *Id.* (citing *Cloer v. United States*, No. 3:09-CV-1119, 2011 WL 2218104 (M.D. Tenn. June 7, 2011)). Thus, the *Hyder* court concluded that the FTCA preempts application of the statute of repose based on the negligence of medical providers that occurred between April 18, 2013, and October 8, 2014. *Id.* "To hold otherwise would punish an FTCA claimant for following the Congressionally mandated administrative claim process." *Id.*

Though preemption is never mentioned by either party, defendant's argument that plaintiff's "cause of action—if any—accrued more than three years prior to August 23, 2023, when he first filed his SF-95 with the VA" [Doc. 9, p. 9], follows the holdings of *Hyder*. And plaintiff, though not agreeing that his cause of action has been extinguished, does not appear to dispute defendant's marker of the end of the statute of repose period. Accordingly, and finding the *Hyder* court's navigation of the preemption doctrine to be persuasive, the Court will apply it similarly here.

Plaintiff claims that VAMC providers were negligent in failing to test his PSA levels annually or biannually and failing to diagnose his prostate cancer beginning in 2015, after his last PSA level test, and continuing through to the date of his diagnosis in 2022 [Doc. 1 ¶¶ 6–10]. Plaintiff filed his administrative tort claim with The Department of Veterans Affairs on August 23, 2023 [*Id.* ¶ 4; Doc. 1-2]. A final agency decision denying the claim was issued on December 28, 2023 [Doc. 1-3], and plaintiff filed this action on February 13, 2024 [Doc. 1].

Any negligence claims based on events occurring three years or more before the date plaintiff filed his administrative claim, *i.e.*, earlier August 23, 2020, are barred as a result of Tennessee's statute of repose. *Hyder*, 2020 WL 127661, at *8. Claims arising from events occurring between August 23, 2020, and February 13, 2021, *i.e.*, three years before plaintiff filed his action, are preempted by the FTCA and not barred by Tennessee's statute of repose. *Id.*; *see also A.J.J.T.*, 2016 WL 3406138, at *3–5 (internal quotation marks and citation omitted) (stating "the filing of the administrative claim within the statute of repose meets the policy behind such limitation provisions, which is to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared"); *Eiswert*, 322 F. Supp. 3d at 874 (citations omitted) (noting that Tennessee's statute of repose can stand "as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress" and emphasizing that agencies could delay notices of denial in order to allow the statute of repose to extinguish a plaintiff's claim, which is not the outcome intended by Congress in enacting § 2401(b)). And all claims arising from events from February 13, 2021, to February 13, 2024, the date of plaintiff's filing of his complaint, need not be preempted as they do not run afoul

of Tennessee's statute of repose. *See also Cloer*, 2011 WL 2218104 (holding statute of repose did not bar claim based on continuing failure to diagnose over three and one-half-year period before date suit was filed).

### B. 12(b)(6) – FTCA's Statute of Limitations

Defendant also moves to dismiss pursuant to Rule 12(b)(6), asserting that plaintiff's claims are untimely under the FTCA. The FTCA provides that

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). To move forward with an FTCA claim, a prospective plaintiff must satisfy both requirements of § 2401(b). *Ellison v. United States*, 531 F.3d 359, 361–62 (6th Cir. 2008) (holding that § 2401(b) is a two-part requirement despite Congress's confusing use of "or" in the drafting of the statute). The parties do not appear to dispute whether plaintiff satisfied the second requirement of § 2401(b), filing his claim within six months of receiving the VA's notice of denial [*See* Doc. 1-3]. But defendant asserts that plaintiff's cause of action accrued by at least January 15, 2015, because plaintiff "knew or should have known by January 15, 2015, that no PSA check had been performed for more than a year" [Doc. 8, p. 10].[2] Accordingly, defendant contends that since plaintiff filed his administrative claim with the VA more than two years from that date, on August 23, 2023, plaintiff's claims against defendant are time barred under 28 U.S.C. § 2401(b) [*Id.*]. In turn, defendant asserts that plaintiff's

---

[2] In its reply, defendant uses the year 2016 instead of 2015 [Doc. 13, p. 2]. Regardless, however, of whether defendant relies on a 2015 or 2016 date, its statute of limitations argument remains intact.

complaint fails to state a claim upon which relief can be granted and therefore, requests that this case be dismissed pursuant to Rule 12(b)(6) [*Id.*].

In response, plaintiff asserts the same opposition as he does for defendant's statute of repose argument—that "[t]he triggering act or omission in this case is the failure to detect cancer, not simply the failure to provide a yearly or bi-annual test" [Doc. 12, p. 2].

§ 2401(b) itself is silent in regard to when a claim accrues, but the Supreme Court has held that a plaintiff's medical malpractice claim "accrues when plaintiff 'knows both the existence and the cause of the injury.'" *Amburgey v. United States*, 733 F.3d 633, 636 (6th Cir. 2013) (quoting *United States v. Kubrick*, 444 U.S. 111, 120 (1979)). "*Kubrick* thus established an 'inquiry-notice rule' rather than a 'discovery rule (in the sense of discovering the existence of a claim.'" *Id.* (quoting *Hertz v. United States*, 560 F.3d 616, 618 (6th Cir. 2009)). In more detailed terms, "a claim accrues when a plaintiff possesses enough information with respect to [his] injury that, had [he] sought out independent legal and expert advice at that point, [he] should have been able to determine in the two-year period whether to file an administrative claim." *Hertz*, 560 F.3d at 618 (internal quotation marks omitted) (quoting *McIntrye v. United States*, 367 F.3d 38, 53 (1st Cir. 2004)). Thus, a plaintiff need not know the "precise medical reason for [his] injury." *Amburgey*, 733 F.3d at 638 (quoting *Kerstetter v. United States*, 57 F.3d 362, 364 (4th Cir. 1995)). Instead, mere "knowledge that an injury was a result of medical treatment generally, as opposed to knowledge of the specific injurious action or omission by the physician, is sufficient for a claim to accrue." *Id.* "The determination as to *when* a plaintiff has such knowledge is necessarily fact-intensive." *Hertz*, 560 F.3d at 619 (emphasis in original).

"[F]ederal courts also recognize that, when a plaintiff's claim of malpractice is predicated upon 'a physician's failure to diagnose, treat, or warn' and that this failure 'results in the development of a more serious medical problem,' identifying the injury and its cause is more difficult than when 'affirmative conduct by a doctor inflicts a new injury.'" *Tankesly v. Corr. Corp. of Am.*, No. 3:14-CV-911, 2017 WL 3034654, at *11 (M.D. Tenn. July 18, 2017) (quoting *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir. 1983)). In the former case,

> the injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient or the mere continuance of that same undiagnosed problem in substantially the same state. Rather, the injury is the *development* of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment.

*Augustine*, 704 F.2d at 1078 (emphasis in original). Thus, in a case involving a claim for failure to diagnose or treat, "a plaintiff's cause of action accrues when he 'becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition.'" *Tankesly*, 2017 WL 3034654, at *11 (quoting *Augustine*, 704 F.2d at 1078); *accord Meyer v. United States*, 23 F. Supp. 3d 861, 863 (W.D. Mich. 2014).

In his complaint, plaintiff states that his PSA levels were 7.70 on February 6, 2007, 12.60 on April 29, 2013, and 19.00 on January 14, 2014 [Doc. 1, p. 2].[3] Plaintiff characterizes this as a "modest rise" in his PSA levels and states that during this time period, he was without symptoms, prostate problems, or any mass nodules [Doc. 12, p. 1]. Given the "modest rise," plaintiff asserts that it was reasonable for him to "watch and wait[,]" citing his medical records

---

[3] The Court notes for accuracy that, based on the medical excerpts provided by defendant, it appears that plaintiff's PSA level was 18.40 on January 14, 2014, and 19.00 on July 18, 2014 [Doc. 8-1, p. 2].

in which the nurse practitioner wrote that plaintiff agreed "it is safer to continue observation" [*Id.*; Doc. 8-1, p. 6]. Plaintiff also notes that in his last few prostate examinations, the size of his prostate actually decreased [Doc. 12, p. 2]. While plaintiff did have bloodwork done multiple times following his last urology appointment, he contends that his PSA levels were not checked again until November 29, 2022, when his levels were 259.67 [*Id.* at 1; Doc. 1, p. 2]. Presumably, plaintiff was diagnosed with metastatic prostate cancer on November 29, 2022, or sometime thereafter.

As shown in the medical note excerpts attached by defendant, plaintiff's PSA level was at 4.45 on March 27, 2007, which was a decrease from his prior level of 7.70 on February 6, 2007, though still "elevated" per his medical provider [Doc. 8-1, p. 22]. While plaintiff refused prostate biopsies from 2007 to 2014, plaintiff did agree to take Bactrim for a period of one month on at least two occasions [*id.* at 23, 24], and he agreed to a trial of Finasteride beginning on October 6, 2009, and continuing until at least September 11, 2014 [*Id.* at 3, 16]. On April 15, 2008, plaintiff's medical records indicate that plaintiff refused a prostate biopsy "even with knowledge that he may have cancer" [*Id.* at 21]. Similar statements are found throughout the notes of plaintiff's reoccurring urology clinic appointments [*Id.* at 6, 8, 10, 12, 14, 16]. Plaintiff's medical notes on April 29, 2013, specifically indicate that, while plaintiff knew he may have prostate cancer, he agreed it was safer to continue observation because of his chronic heart disease and because he felt well [*Id.* at 6]. Additionally, throughout the excerpted medical notes, plaintiff's family history indicates that his brother had elevated PSA levels, but he had five negative prostate biopsies [*Id.* at 2, 5, 7, 9, 11, 13, 15, 17, 26]. In his response to defendant's motion to dismiss, plaintiff also makes mention of his brother's history of elevated

PSA levels with negative prostate biopsies, appearing to argue that this influenced plaintiff's refusal to pursue a prostate biopsy himself [Doc. 12, p. 2].

On August 7, 2014, plaintiff's medical notes indicate that his provider called him regarding his PSA level, which at that time was 19.00 [Doc. 8-1, pp. 2, 4]. Plaintiff informed his provider that he thought he wanted a prostate biopsy [*Id.* at 4]. Plaintiff's medical provider noted that they would request a consult with "cardiology . . . reg[arding] risks of doing a prostate biopsy [*Id.*]. On September 11, 2014, plaintiff's medical notes show that his provider had a long discussion with him about the prostate biopsy and also informed him that "his corrected PSA [was] 38 since the [PSA] is doubled on [F]inasteride" [*Id.* at 3]. Despite their discussion, however, plaintiff changed his mind and refused the prostate biopsy [*Id.*]. Plaintiff informed his provider that he did not want to reschedule an appointment with the urology clinic, but that he would call if had "more questions or to schedule a prostate biopsy" [*Id.*]. The Court has no medical note excerpts beyond the September 11, 2014, appointment date. Plaintiff, however, maintains he is currently a patient of the VAMC, and that he has continued to have yearly labs [Doc. 12, pp. 1, 3].

The difficulty with determining the accrual date in this case, *i.e.*, when plaintiff became "aware or through exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition", here metastatic prostate cancer, is the lack of information the Court has between 2015 and plaintiff's diagnosis in 2022. *See Meyer*, 23 F. Supp. 3d at 863. Plaintiff undoubtedly became aware of such development in 2022, when his PSA level was found to be 259.67 in November and he was subsequently

diagnosed with metastatic prostate cancer [Doc. 1, p. 2].[4] Defendant, however, has not offered any evidence to suggest that plaintiff knew, or had any reason to know, before 2022 that he had metastatic prostate cancer.[5] Defendant argues that plaintiff should have known by 2015 or 2016 that his PSA levels had not been checked [Doc. 8, p. 10]. But this in no way relates to plaintiff's awareness of the development of a pre-existing problem into a more serious condition. *See also Harvey v. United States*, 685 F.3d 939, 949 (10th Cir. 2012) (stating that the district court improperly equated the plaintiff's "knowledge that he had not received proper treatment with the knowledge of the development of a more serious condition").

Therefore, without further information relating to the FTCA accrual date in this case, the Court cannot conclude at this juncture that plaintiff's claim is time-barred under 28 U.S.C. § 2401(b).

## IV. CONCLUSION

Based on the foregoing, defendant's motion to dismiss [Doc. 7] is **GRANTED in part** and **DENIED in part**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff does not provide an exact date for his metastatic prostate cancer diagnosis, but it is presumed this diagnosis was made shortly after plaintiff's PSA level was checked on November 29, 2022 [*Id.*].

[5] While defendant's medical note excerpts indicate that plaintiff was aware he may have cancer as late as 2014 [Doc. 8-1, p. 21], there is nothing in the present record to suggest plaintiff's awareness that such condition worsened or moreover, metastasized.

Case 2:24-cv-00025-TAV-CRW   Document 15   Filed 03/27/25   Page 18 of 18
PageID #: 169